Next case on our docket is HM Intl LLC v. Twin City Fire Insurance Company. Mr. Davidson. Good morning. May I please report Aaron Davidson on behalf of HM Intl. So this is an insurance dispute and we're here on an appeal from the District Court's grant of summary judgment. The District Court's error in this case was trying to shortcut past the insurance policy language and Texas law to see if it could determine the ultimate liability for a potential cause of action against HMI. And that's where this went off the rails. The District Court eventually reversed itself on about half of its analysis, concluding that Twin City did breach its duty to defend and that the demand letter did constitute an arguably covered claim under the policy. But on the duty to identify, the District Court stuck with its view that it could decide the merits of the potential claim against HMI rather than addressing the policy language. And the duty to defend issue has not been appealed, is that right? That's correct. So the fundamental issue in this case is what does the phrase legally liable to pay solely as a result of a claim mean in the context of this insurance policy? And I think this can be answered simply by reading and applying the policy language. And so what I've given as a handout is the two pages that just collect the key policy provisions just to simplify this. So the demand letter that HMI received from the guides, that was an entity claim as defined in the policy. There's no dispute about that. The first point, the first definition of an entity claim means a written demand for monetary damages or other non-monetary relief. Civil proceeding and criminal proceeding are also included, but the very first point is a written demand. So no lawsuits required for there to be a claim. Now, the policy also provides that Twin City has a duty to, has a right and duty to defend claims covered under the policy, even if such claim is groundless, false, or fraudulent. So there's no hurdle or barrier that a claim must get over before it warrants coverage under this policy. So given the party's definition of a claim, no lawsuit by the guides was required. The demand letter was a claim. And the parties anticipated that some claims could be susceptible to any number of defenses because the claim could be groundless, false, or fraudulent. Now, there's no dispute that the claim was timely submitted to Twin City. Twin City denied the claim because of some policy exclusions that have yet to be adjudicated. And the district court eventually held that Twin City breached its duty to defend when it denied its obligation to defend Twin City. I'm sorry, to defend HMI. So after Twin City denied its duty to defend HMI, HMI was left to resolve this claim on its own. And it elected to do so via settlement agreement with the guides. There's no agreement, there's no dispute that that agreement obligated HMI to pay $470,000 to the guides. There's no dispute that HMI actually paid the $470,000 to the guides. At one point, that is lost a bit. It says part of the settlement, HMI also received the rights to proceed against $350,000 that at that time was being held by the Singapore authorities. Ultimately, that money wasn't recoverable, but I think that's a material part of the settlement agreement. You said it wasn't recoverable, is that what you said? Ultimately, it was not recoverable, despite hiring counsel in Singapore and pursuing it for a number of months. So in the policy, this is on the second page, I can hand out, loss is defined as defense costs and damages. Damages means the amounts, other than defense costs, that the insurers are legally liable to pay solely as a result of a claim covered by this liability coverage part, including point number one is compensatory damages. So if you take the matter to trial and you lose and you're obligated to pay compensatory damages, that meets the definition. The second point is settlement amounts, and then there are a list of six other things, and then there are four things that are excluded from the definition of damages. So this is the heart of the issue. There's no lawsuit required for there to be a claim. There's no requirement to litigate a dispute to resolution for there to be a loss. No determination by a court is required regarding liability. There's no requirement there be any determination that a claim be anything more than false, fraudulent, groundless. That standard was contemplated by the parties. So here, another point, there's no category here for certain settlements that are excluded from the definition because they don't meet certain qualifications. The settlement amount is not limited in any way. Now, Twin City characterizes this as a voluntary payment, and if you think about it, all settlement agreements are voluntary. You're not forced to settle in the sense of you are forced to pay a judgment after a trial. So anytime parties enter an agreement, you could call that voluntary. But having reached a settlement agreement, if that agreement requires you to pay money, it's no longer voluntary. You're complying with the settlement agreement at this point. Where that matters is let's say there's a settlement agreement that says we're going to pay $100,000, and then you say, you know what, we're also going to give you credit monitoring services because of our cyber fraud breach here. Well, if you add to the agreement, then that's a voluntary payment that would not be required by the settlement, and that I think would fairly be excludable. But if you've reached a settlement agreement and then you make the payment, I don't think that's fairly considered a voluntary payment at that point. So here, HMI is seeking identification because the policy provides that the insurer shall pay loss on behalf of the insured entity resulting from the entity claim. So it's not voluntary. It's mandatory for Twin City to pay the settlement amount by virtue of the settlement agreement. So you need to discuss the limitations issue, obviously. So the limitations issue, Your Honor, is it's an affirmative defense. And I think the issue that we're fighting about here, does this go to liability or go to coverage? In our view, it's purely a liability question. And it's the hypothetical of what would have happened if the G.I.B.S. had filed a lawsuit? Could HMI have prevailed on that claim by serving a statute of limitations defense? And from my perspective, it's not a relevant inquiry. Because if you think about what would this case stand for? At what point is an insured able to say, we can settle this case even though we know we may have some really good arguments against liability? Do we need to pursue those? Or can we settle this case now, given that the insurer's walked away and breached his duty to defend? So if you think you've got, and it could be any affirmative defense. It could be a standing issue. You may think there's a proportionate responsibility issue in the case. But if you can you settle that case, having received a written demand? Or do you say, I've got to wait until the lawsuit's filed? There'd be no incentive to settle. Right. That's my concern about the rule coming out of this case. I mean, limitations defense might not ever even be asserted. Or it may be asserted in a clumsy way that a court won't accept. Your Honor, that's exactly my point. If a lawsuit's filed and HMI failed to assert an adjudication, well then what? If there's a settlement at that point before there's any further adjudication, does that risk fall on HMI? Or does that risk fall on Twin City that should have stepped up and defended the case if it wanted to control how the case proceeded? And if you assert the defense, do you have to litigate it through summary judgment? What if you get a state court judge that just doesn't like summary judgments? At that point, do you go to trial? Your Honor, I've had two cases I've been involved with. I've never heard of a state court judge that doesn't like summary judgment. Your Honor, I've had two cases that have come all the way to this court before and both concern statute of limitations arguments. And so even if you think you're right and even if you think you can win, you may spend years litigating these issues to get there. Just as an aside, a lot of this focus has been on a negligence claim. The settlement covered all possible claims against HMI and its individuals. There's a potential breach of fiduciary duty claim here under Texas law that would have four years of limitations. We've discussed potential tolling issues. There was a number of factors that go into the analysis. But I think all of this inquiry about should HMI have settled or not gets into the thoughts and analysis of trial counsel and the client and its business considerations and concerns. And that all factors into the amount of the settlement or the fact of whether there will be a settlement first, but assuming there will be, what's the amount? That's correct, Your Honor. One dollar or ten million dollars or anything in between, right? Exactly, Your Honor. And I know there was some discussion, particularly in Twin Cities brief, about the Hamill case from Texas Supreme Court in 2017, where there's a concern that a settlement has to be the, well, a settlement may not be the product of a fully adversarial proceeding. And so I want to just hit that briefly because I think it writes directly to this point. The concern in Hamill was that there wasn't a meaningful incentive to ensure that the But if you look at what's happening in that case versus this case, there's some clear differences. In Hamill, you had a builder who's being sued by homeowners for defective work. And the settlement involved the homeowners taking a judgment against the builder, but with an agreement not to execute against the builder, and then the homeowners would assert the claim against the insurance company. Well, under those facts, you can see why there'd be some concern that the amount of the parties, because the defendant's not ever going to pay it. The analogy here would be if the Guibes settled with HMI, agreed to the full amount of their claim, and then HMI was out of the case because there was an agreement not to ever go against HMI, and the Guibes were standing here arguing that Twin Cities should be liable to them. These facts are totally different because the settlement negotiations actually involved HMI paying real money to the Guibes with no assurance that they could ever recover that money. So Hamill does not stand for the proposition that you have to litigate a case all the way to judgment. The concern is... Because it obfuscated the Gandy case. Correct, Your Honor. So I think as I look at this, the problematic part of Twin Cities' analysis is where do you draw the line on this kind of analysis? If you open the door here to say, we think this statute of limitations case is so clear that we can say there's no duty to indemnify, well, could that apply to any other affirmative defense? And who makes the decision about whether it's so clear or not so clear that an insured can actually decide to settle a case? But fundamentally, none of this process is in disagreement. There's nothing in the insurance policy that says before you settle, there's got to be some determination by some third party or by the insurer that there is a risk of liability that's being settled. Once the insurer walks away, it doesn't get to question the reasonableness or the amount of the settlement. But frankly, that's all this is. This is Twin City trying to dispute the amount of the settlement. Your Honor, if there are no further questions...  Thank you, Your Honor. May it please the Court, Steve Knight on behalf of Twin City Fire Insurance Company. The primary issue in this appeal is whether the district court properly determined that HMI's claim for indemnity with respect to money that they paid to a third party to settle a time-barred claim that was never advanced in any court of law is not covered by the policy. And secondary issues pertain to whether additional grounds for summary judgment that are included in their motion also supports the judgment. And I submit that the answer to both of these questions is yes. And I'd like to start with the first issue of their claim for indemnification for the settlement agreement. Do you agree that even a demand letter constitutes a claim in terms of this policy? I agree that the policy defines a claim as including a demand letter. Yes, sir. Now, the following material facts are straightforward and they are undisputed in the record. The Gibbs negligence claim against HMI accrued on January 12, 2015, when HMI wired money out of the Gibbs account. On April 28, 2015, the Gibbs lawyer sent a demand over to HMI accusing them of negligence with respect to the handling of their account. However, the Gibbs never advanced that claim in any court of law, and instead they allowed the claim to expire. It terminated and it lapsed on January 12, 2017. Rather than suing HMI on any claim, the Gibbs partnered with HMI to jointly sue Twin City to pursue various avenues of coverage under the policy. Then seven months later, seven months after the Gibbs claim expired and terminated, HMI made the decision to pay them the $470,000 even though there had been no renewed claim, no renewed threat, no lawsuit, no nothing. When you say expired and terminated, you just mean as per the state statute of limitations? As per the limitations, correct, Judge. So the question for the court is when you have a demand letter that is sent and you have the claimant who abandons it, does nothing with it, and it terminates, it becomes stale, can the claimant simply throw money at the Well, if you breached your duty to defend them, I think the answer is yes. Okay, Judge, and then that gets to the heart of what their argument is, and I would like to address that issue. Because what they argue is that under cases like the Nsearch case and the Evanston case that both parties have breached, that's the heart of their argument. They say that because the trial court found and made a determination that Twin City didn't provide a defense with respect to that April 2015 demand letter, that therefore Twin City is stuck with this settlement and has to indemnify them. Here's the fundamental problem with that argument. The facts of Nsearch and Evanston don't fit this case, and here's why. In all of the cases that HMI cites and relies on, you have situations where a third-party claimant files a timely lawsuit against the insured, the insured tenders that lawsuit to the carrier and asks the carrier to please provide a defense. The carrier in those situations has the opportunity to conduct an eight-corners rule analysis, comparing the facts alleged in the lawsuit with the actual policy to determine whether or not they want to provide a defense in that case. In all of their cases, the carrier has declined to provide a defense, which has left the insured in a precarious position. They are in a lawsuit, and they are threatened with liability on a valid claim, or maybe even a frivolous claim. They're stuck in the lawsuit, and they have to pay for their own defense. They're in a precarious position as to whether they want to continue with paying the defense costs or simply settle the case. That's not what happened here. In our case... You're basically saying a demand letter is not enough, that a lawsuit has to be filed. A lawsuit would have to be filed, and the reason is because... In other words, you don't have a duty to defend until a lawsuit is filed. Is that your position? We would have a duty to... What the trial court found is that we had a duty to defend with respect to that demand letter. Notably, when the district court said, HMI, submit whatever your damages are with respect to Twin City not providing a defense, they said it's not pragmatic to litigate that. And the reason is because that demand letter expired with nothing being done with it. This is not a situation where HMI was sued by the Gibbs for negligence, tendered that lawsuit to Twin City and asked for a defense of that lawsuit. Twin City never had the opportunity to look at the complaint and study the allegations and conduct an eight corners rule analysis to decide whether... You are saying you don't have a duty to defend until a lawsuit is filed. I'm saying that the court said that we had a duty to defend with respect to the demand letter, but there was nothing to defend. You're saying you do not have a duty to defend a demand letter. We would have a duty to defend if there was something to defend. They had a claim for negligence in the demand letter. Did you have a duty to defend against that or not? The district court said that we did, but there was nothing to defend. I'm saying, what do you say? I say that that constitutes a claim. So what did your client do to defend against the demand letter? We did not defend the demand letter, but there was no consequence to HMI as a result of that decision. The cases that they rely on all involve situations where the lawsuit was filed. The argument that they say we're stuck with the settlement agreement, the reason that rule exists is because the insured in those cases are faced with a decision of whether to incur defense costs in a lawsuit or to simply settle the case. That is not the situation in this case, and that's critical. That's why the cases that they're relying on— Did Twin Cities not get the demand letter? Twin Cities did receive the demand letter, and their position was that the demand letter, the way it was worded, and it was quite short, invoked several exclusions in the policy and that it didn't have a duty to respond. The exclusions include the fee-for-services exclusion that we've included in our briefing. So that was their position, but nothing materialized from that. And in this underlying lawsuit, the Gibbs never asserted any claim against HMI, and consequently, Twin City never had the opportunity to do an eight-corners rule analysis and make that decision as to whether or not it will provide a defense. Maybe it would have. Maybe the complaint was worded a certain way that pled its way around the exclusions. We don't know that because the Gibbs abandoned their claim. They never asserted it. Twin City never had the opportunity to do an eight-corners rule analysis, and HMI was never left— Unlike the insurers and the cases they cite, HMI was never left in a situation where they had to make a decision as to whether to defend a lawsuit or to simply settle the lawsuit. So our position is that the cases that they're relying on are misplaced, and that analysis doesn't apply. But even if those cases were applicable to the court's decision in this case, they all recognize that Twin City has the ability to contest whether or not there's coverage. And what's important here is the definition of loss in the policy. The definition of loss is the amounts that the insurers are legally liable to pay solely as a result of the claim. Well, here, the money that they paid is not the result of any claim because the claim expired. It terminated. And we've cited several Texas cases for the court that stand for the proposition that once the statute of limitations runs and the insurer doesn't bring a lawsuit, the claim is extinguished. It cuts off. It terminates. So here, the claim, by the time they settled, which wasn't in a lawsuit, by the time they reached their settlement agreement, the claim that was that issue, that was the subject of that April 2015 demand letter, it extinguished. It stopped being a claim. Under the policy, loss requires a claim. And there wasn't a claim anymore because it extinguished. I would submit that there are no cases under Texas law, no cases decided within the Fifth Circuit, that allow an insurer who has never been sued to settle a time-barred claim and shift the risk of that financial responsibility to his insurance company. And the question is, can the insured and the third-party claimant create this indemnity obligation and shift it to the insurance company? The answer is that you just agree to defend, which under Texas law, it's pretty easy to impose a duty to defend, as you know. The problem here was that there was nothing to defend because there was no lawsuit. And that's why when the court asked to please submit what are the consequences of your not defending here, they said it's not pragmatic to litigate that issue in this case. So they're asking the court to say that once a statute of limitations runs, no lawsuit is ever pursued or advanced against the insured, they want this court to hold that the insured can partner up or team up with the claimant, pay money, and shift that risk to the carrier. And one thing that troubled the district court, and it certainly is troubling to me as well, is how long can you do that? Can they settle one year after the limitations period and shift the risk to the carrier? Can they settle five years after the limitations period and shift that risk to the carrier? What about 10 or 20 years later? They never addressed that issue, even though that was the primary concern of the district court. To the extent they did address it, they told the district court we don't think that there should be a cutoff. And I think that that's very problematic. And the district court did as well. With respect to the alternative grounds that we have for supporting the summary judgment motion, any settlement would have to be the result of a fully adversarial proceeding. And the key language from the Hamill case is that the controlling factor is whether at the time of the underlying trial or settlement the insured bore an actual risk of liability for damages awarded or agreed upon. Here, HMI was never sued. It had no actual risk of liability or of a judgment being entered against them, and the claim was time-barred, and the Giebs abandoned the claim and decided not to assert the claim against HMI. So there was no adversarial process when they agreed to pay money to the Giebs. Now, HMI argues a bunch of hypotheticals that could have happened in the lawsuit. They claim that the Giebs potentially could have asked to amend the scheduling order to extend the time for pleadings. They argue that, hypothetically, the Giebs could have taken the position that the statute of limitations hadn't run. The Giebs argue that, hypothetically, I'm sorry, HMI argues that, hypothetically, the Giebs could have asserted their negligence claim within the lawsuit and that the district court could have allowed that. And what I would submit is if all of those things came to fruition, then Twin City would have had the opportunity to do an eight-corners analysis and decide whether or not it would provide a defense. And here, none of that ever happened. The amount that was paid, you would acknowledge was a negotiated amount, right? In other words, it wasn't the full amount of the raw initial losses. My question is that there was an adversarial give and take in the negotiation of that number, however they came up with it. I don't know that it was adversarial in any way. I mean, what I do know is that the Giebs were longtime financial customers of HMI, and I'm sure HMI wanted to compensate them for the loss. I don't know that they did so out of a sense of an adversarial process. But I do acknowledge opposing counsel's argument with respect to the math, and I don't dispute that. I know that the settlement agreement, I don't believe is in the record, so I can't verify how the math was actually calculated. But I understand that his argument is that it closely approximates what the Giebs' damages may have been in light of the various recoveries that they had in attempts to claw back the money that was wired. So does that answer your question? We don't tell you whether it answers your question. Understood. So, but their argument with respect to this fully adversarial process, and they argued this throughout the reply brief, is that if Twin City didn't like it, they should have intervened in the lawsuit. Well, there's no lawsuit to intervene in. There's no lawsuit to defend. And the only thing that existed back in 2015 was a demand letter on a claim that expired seven months before they ever reached a settlement agreement. The other argument that they raised in the reply is that, unlike the situation in Hamel, that they didn't have a written agreement to avoid any liability in the way that they did in the Hamel case, but the court in that case actually said that a written agreement is not necessary. It said that the defendant, they said that if the defendant had no meaningful stake in the outcome of the litigation, then that's when this adversarial rule, the rule that requires a fully adversarial process, that's when it kicks in. And the key language there is the outcome of the litigation. But Hamel also said that an insurer that wrongfully refuses to defend its insured is barred from collaterally attacking a judgment or a settlement. Doesn't it say that? Refusing to defend the insured in the lawsuit, which never happened. That's the scenario I was describing earlier, where the insured was sued, tendered the complaint to the carrier, and the carrier... In a lawsuit, you're inserting those words in the quote from the case, aren't you? That's not what the case says. Well, what the case stands on is the fact that the insured was sued and tendered it to the carrier... I know that's what happened in the case, but I'm telling you that's not what... The statement that I read doesn't include anything about in a lawsuit. I agree with that, Judge. I'm saying in the context of the case, that's how the opinion was written as I consider it. Because you have to consider the full context of the case and what the court is talking about. Our position is that the district court didn't reach the issue of whether or not this was a fully adversarial process, but under these standards, because HMI was never even sued in a lawsuit, there was not a fully adversarial process. There was no adversarial process at all. The other issue that I'd like to raise and that we also raised in the summary judgment motion is, again, even under the NSEARCH line of cases, if the court were to hold that they apply despite the lack of a lawsuit and despite the fact that the claim became barred by the statute of limitations, is that the carrier maintains the right to challenge coverage for any settlement. And here, the DNO policy states that the insurer shall not pay loss in connection with any claim in any way related to rendering of or failing to render any services for or on behalf of others for a fee including services for or on behalf of a customer or a client. And here, the summary judgment record conclusively demonstrates through the service agreement that HMI charges a fee to the GEBS for their financial services. And that's at record 288. The $8,000 fee that HMI charges to the GEBS is specifically listed in an appendix item to that contract and it describes the fact that the fees are specifically for quote-unquote accounting services. If we were to reverse the summary judgment, I understand that's not what you want, but if we were to do that, then that all would be up to Judge Bennett to determine. Would it not on remand? I think that given the briefing that we have, I think that this court can affirm on alternative grounds that we've raised in the summary judgment motion and that are supported in the record. But I think that the court, if it were inclined to reverse this, could remand it for the district court to make its reasoned analysis of the two issues that it did not reach in its summary judgment ruling, which are the fully adversarial proceeding issue and the issue as to the applicability of these exclusions. So, with that, Twin City would respectfully ask the court to affirm the judgment on the primary grounds in the court's opinion and also the alternative grounds that the district court did not reach. And if the court doesn't have any other questions for me, I'll sit down. Thank you. So I'll start with the discussion about the cases in which Twin City says those cases involved a lawsuit that was filed and then there was a determination. Here, this policy doesn't require a lawsuit to be filed. We've discussed that here, so I don't think that's a valid basis for distinguishing those cases. Now, regarding the timing here, the incident happened January 12, 2015. It wasn't discovered until two days later. This lawsuit was filed within two years of the discovery of the loss by the Guibes. Given that, even if the two-year statute of limitations applies to a negligence claim, there was a pending lawsuit that involved the Guibes. And so if we play the what-if scenarios, what happens if, when it gets to the period of time where Twin City files its answer to the lawsuit and for the first time says, no, the Guibes are definitely not insured, at which point Twin City, I'm sorry, then HMI and the Guibes can say, well, maybe we should resolve this case because if the Guibes don't have a direct claim under the crime part of the policy, maybe it makes sense to have a discussion about settlement. At that point, if there's a breakdown in those discussions, is it that far-fetched to think that the Guibes could then assert a claim in this cause of action against HMI? Again, these are the what-if scenarios that I think the Texas Supreme Court has been clear that you're not supposed to get into because these are questions about liability. It's not a question of coverage. And there's been some discussion about, well, Twin City didn't know. Without a lawsuit, it couldn't evaluate. Look, Twin City was in this argument. It deposed the Guibes. It saw the settlement agreement. It declined to participate in settlement. There was no question that Twin City had all the information it needed so that if at any time it wanted... That's one you had brought out about the facts. Before the limitations ran, they knew there were discussions between the Guibes and HMI, did they not? I don't think there's anything in the record about Twin City's knowledge of discussions before the lawsuit was filed. There was discussions after the lawsuit was filed and there is a request for admission where Twin City responded that on attorney-client privilege it wouldn't answer whether it was involved or had the opportunity to participate in settlement discussions. But my point is this. At any time, Twin City could have said, you know what, in addition to these exclusions that we've identified, we now have a new argument. And the new argument is that we think these claims should have been asserted already and that they're time-barred. That never happened. And there's a flavor that comes through from Twin City's argument that there's some sort of collusion in the settlement agreement because of a customer relationship or family relationship. That was never a basis for the district court's decision and there's not evidence in the record to support it. Family disputes are some of the most contentious disputes there are  contentious. So those facts alone wouldn't support any kind of determination that there was any sort of collusive agreement here. On the question of how long does the insurance company have risk, it's the limitations period on a claim against the insurer. So when the insurer denied this claim definitively in October of 2015, that started the clock on the claim against the insurer. That's their protection. If they wanted to negotiate for a shorter period of time, they could do that. In the end, all of this is just Twin City trying to attack the reasonableness of the settlement that HMI reached after Twin City walked away and refused its duty to defend. There's no requirement that there be a lawsuit be filed and there's no reason to believe there's anything inappropriate about the settlement agreement that HMI reached with the guys. So this case should be, summary judgment decision should be reversed, it should be remanded for further analysis of the exclusions that Twin City has asserted. Thank you. That concludes the argument. Thank you.